UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

MOLLY C., as Estate Administrator for  :
NICHOLAS C. (deceased),     :
    Plaintiff,      :
            :
    v.       :  C.A. No. 25-258-PAS
            :
FRANK BISIGNANO,     :
Commissioner of the Social Security :
Administration,      :
    Defendant.    :

**MEMORANDUM AND ORDER**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

For many years, the now-deceased claimant, Plaintiff Nicholas C.,[1] worked for the Rhode Island state courts as a senior administrator, a highly skilled position. Tr. 104. This job ended in December 2022.[2] Tr. 388. Alleging onset of disability on December 12, 2022, Plaintiff filed an application for Disability Insurance Benefits ("DIB") based on mental impairments – panic attacks, severe depression, severe obsessive-compulsive personality disorder ("OCPD"), severe obsessive-compulsive disorder ("OCD") and severe post-traumatic stress disorder ("PTSD").[3] Tr. 250, 253. His date-last-insured is December 31, 2026.

---

[1] Plaintiff Nicholas C. was tragically killed on July 28, 2024, when he was hit twice by motor vehicles while he was a pedestrian. ECF No. 10-1. His estate administrator, Molly C. is now substituted as the named plaintiff. Text Order of Nov. 3, 2025 (granting motion to substitute party, ECF No. 10). As used in this Memorandum and Order, "Plaintiff" refers to Nicholas C., while Molly C. is referred to as the estate administrator. The Commissioner notes that the record contains nothing to suggest that Plaintiff's death was related to his alleged disability. See ECF No. 12 at 1 n.1. This proposition has not been contested by the estate administrator.

[2] A lawsuit regarding the termination was dismissed by the Court on March 4, 2025. Cote v. Rhode Island, No. 24-cv-75-PB-AKJ, 2025 WL 691387, at *1, 5 (D.R.I. Mar. 4, 2025).

[3] Plaintiff also alleged or was treated for an array of physical impairments and testified about recent back issues. However, he has not challenged the finding that these were not established or were non-severe during the period in issue. They will not be discussed further.

An administrative law judge ("ALJ") considered the evidence of record, including a letter from a psychologist who provided treatment prior to the period in issue (Dr. Albert Hamel),[4] the administrative findings of two non-examining expert psychologists (Drs. Jeffrey Hughes and Clifford Gordon)[5] and a report from a consulting examination psychologist (Dr. Louis Cerbo).[6] Based on his weighing of the evidence, the ALJ found that Plaintiff was severely limited by anxiety, depression, OCD, OCPD, PTSD and opioid use disorder (in remission), but that he retained the RFC[7] to understand, remember and carry out simple instructions, with occasional interactions with coworkers and supervisors but none with the general public, only occasional changes in a routine work setting, and no work requiring a specific production rate.  Tr. 62, 65-66.  Because he partially credited Plaintiff's testimony and the "limited supporting medical evidence," Tr. 71, the ALJ's RFC is somewhat more limited than what was found by the non-

---

[4] Dr. Hamel's last contact with Plaintiff was on November 2, 2022, prior to the period in issue.  Tr. 398.  In a summary attached to Dr. Hamel's letter dated February 6, 2023, submitted in connection with Plaintiff's application, Dr. Hamel noted various observations but declined to offer an opinion "as to [Plaintiff's] ability to meet the demands and pressures of full-time competitive employment, to sustain adequate concentration, persistence and pace over the course of a full workday and workweek, to consistently and reliably interact appropriately and effectively with supervisors, coworkers and the public, and to adapt appropriately to changes which might occur in work settings."  Tr. 335, 400.  Dr. Hamel articulated only one RFC opinion: "I do think [Plaintiff] has the cognitive wherewithal to understand, remember and follow simple and detailed work instructions."  Tr. 335, 400.  Dr. Hamel's treating relationship with Plaintiff ended due to Dr. Hamel's retirement.  Tr. 461; see Tr. 397.

[5] These non-examining experts variously/collectively opined that, despite some "moderate[]" functional limits with task persistence and social interaction, Plaintiff retains the RFC to perform simple familiar tasks over an "8/5/40" work routine ("basic tasks which are simple, routine, repetitive and familiar in nature"), can accept supervision ("if contact is minimal, superficial"), but without frequent interactions with customers or coworkers and no consistent contact with the public.  Tr. 115-16, 123-24.  These experts found no understanding/memory or adaptation limitations.  Tr. 115, 123.

[6] Dr. Cerbo recorded Plaintiff's intact ("very good") ability to concentrate, complete multi sequential tasks, memory, insight and judgment.  Tr. 460-61.  On mental status examination, Dr. Cerbo noted a "depressed, 'highly anxious' mood" and that Plaintiff's symptoms of anxiety and depression impact "task persistence" due to Plaintiff's "being periodically irritable and easily frustrated," with some impact of OCD symptoms on activities ("cleaning") and some social isolation because of the loss of his job, having a "small network of friends."  Id.

[7] RFC refers to "residual functional capacity."  It is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting."  20 C.F.R. § 404.1545(a)(1).

examining experts, Dr. Hamel and Dr. Cerbo, in that the ALJ found moderate limits in all spheres, with limits on understanding and remembering with respect to the ability to perform complex work, significant limits on the ability to interact socially and adaptation limits.  There is no medical opinion or expert finding applicable to the period in issue supporting greater functional limits than those reflected in the ALJ's RFC.

Now pending before the Court on consent pursuant to 28 U.S.C. § 636(c) is Plaintiff's motion seeking reversal for further consideration of the determination of the Commissioner of Social Security ("Commissioner") denying his claim.  ECF No. 11.  Plaintiff argues, first, that remand is required because the ALJ relied on the paucity of treatment during the period in issue and failed to consider whether Plaintiff's mental impairments deprived him of "the rationality to decide whether to continue treatment," ECF No. 11 at 6, based on Dr. Hamel's reference to pre-onset failures to attend scheduled appointments, including Dr. Hamel's notation that "seemingly overwhelming anxiety and acknowledged mistrust of others may in part explain his inconsistency in counseling attendance and continuity."  Tr. 335, 398, 400.  Second, Plaintiff contends that the ALJ's finding of the ability to sustain a normal workday/workweek is tainted because it is inconsistent with the moderate RFC findings of the non-examining psychologists.  ECF No. 11 at 9-12.  In response, the Commissioner argues that the ALJ appropriately weighed the substantial evidence as required by law and that all medical opinions and findings support the ALJ's determinations.  ECF No. 12.  In reliance on this argument, the Commissioner has filed a counter motion for an order affirming the ALJ's decision.  Id.

## I.      Standard of Review

As long as the correct legal standard is applied, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42

U.S.C. § 405(g); see Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." Biestek v. Berryhill, 587 U.S. 97, 103 (2019). Substantial evidence "means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (cleaned up). Though the difference is quite subtle, this standard is "somewhat less strict" than the "clearly erroneous" standard that appellate courts use to review district court fact-finding. Dickinson v. Zurko, 527 U.S. 150, 153, 162-63 (1999). Thus, substantial evidence is more than a scintilla – it must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. See generally Irlanda Ortiz v. Sec'y of Health & Hum. Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam).

Once the Court concludes that the decision is supported by substantial evidence, the Commissioner must be affirmed, even if the Court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health & Hum. Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam). The determination of substantiality is based upon an evaluation of the record as a whole. Frustaglia v. Sec'y of Health & Hum. Servs., 829 F.2d 192, 195 (1st Cir. 1987) (per curiam); Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999), aff'd, 230 F.3d 1347 (1st Cir. 2000) (per curiam); see Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (per curiam) (court must consider evidence detracting from evidence on which Commissioner relied). The Court's role in reviewing the Commissioner's decision is limited. Brown, 71 F. Supp. 2d at 30. The Court does not reinterpret or reweigh the evidence or otherwise substitute its own judgment for that of the Commissioner. Thomas P. v. Kijakazi, C.A. No. 21-00020-WES, 2022 WL 92651, at *8 (D.R.I. Jan. 10, 2022), adopted by text order (D.R.I. Mar. 31, 2022).

## II.    Disability Determination

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 416(i); 20 C.F.R. § 404.1505(a).  The impairment must be severe, making the claimant unable to do previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-1511.

### A.    The Five-Step Evaluation

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. § 404.1520(a).  First, if a claimant is working at a substantial gainful activity, the claimant is not disabled.  Second, if a claimant does not have any impairment or combination of impairments that significantly limit physical or mental ability to do basic work activities, then the claimant does not have a severe impairment and is not disabled.  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Appendix 1, the claimant is disabled.  Fourth, if a claimant's impairments do not prevent doing past relevant work, the claimant is not disabled.  Fifth, if a claimant's impairments (considering RFC, age, education and past work) prevent doing other work that exists in the local or national economy, a finding of disabled is warranted.  Significantly, the claimant bears the burden of proof at Steps One through Four, but the Commissioner bears the burden at Step Five.  Sacilowski v. Saul, 959 F.3d 431, 434 (1st Cir. 2020); Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five step process applies to DIB claims).

### B.    Opinion Evidence

5

An ALJ must consider the persuasiveness of all medical opinions in a claimant's case record.  See 20 C.F.R. § 404.1520c.  The most important factors to be considered when the Commissioner evaluates the persuasiveness of a medical opinion are supportability and consistency; these are usually the only factors the ALJ is required to articulate.  Id. § 404.1520c(b)(2); Elizabeth V. v. O'Malley, C.A. No. 23-00459-WES, 2024 WL 1460354, at *3 (D.R.I. Apr. 4, 2024), adopted by text order (D.R.I. Apr. 19, 2024).  Supportability refers to the quantum of relevant objective medical evidence and supporting explanations presented by a medical source to support the medical opinion or prior administrative medical findings; consistency refers to the degree to which a medical opinion or prior administrative medical finding is consistent with the evidence from other medical sources and nonmedical sources in the claim.  20 C.F.R. § 404.1520c(c)(1)-(2).  In considering whether, and to what extent, to rely on medical/expert opinions, the ALJ may pick and choose among portions of them, finding parts persuasive and other parts less so.  Samantha B. v. Bisignano, C.A. No. 25-00004MSM, 2025 WL 2992378, at *6 (D.R.I. Oct. 24, 2025), adopted, 2025 WL 3283309 (D.R.I. Nov. 25, 2025).  Nor does an ALJ err when she imposes more restrictive limitations than the state agency consultants imposed.  Steven A. v. O'Malley, No. 23-cv-544-WES, 2024 WL 4344865, at *6 (D.R.I. Sept. 30, 2024), adopted by text order (D.R.I. Oct. 18, 2024); see Halla v. Colvin, Case No. 15-cv-30021-KAR, 2016 WL 234802, at *7 (D. Mass. Jan. 20, 2016) ("Plaintiff ha[d] no basis for an objection to the RFC assessment crafted by the ALJ when it was more conservative than the recent RFC assessments of non-examining reviewing physicians on which the ALJ was entitled to rely.").  If an aspect of an expert opinion is rejected as less persuasive, the ALJ must state the reason, which must be based on substantial evidence of record.  See 20 C.F.R. § 404.1520c(b).  The ALJ's duty to "articulate how [she] considered the medical opinions and

6

prior administrative medical findings" is not onerous.  20 C.F.R. § 404.1520c(a); see Warnell v.

O'Malley, 97 F.4th 1050, 1053 (7th Cir. 2024).  In assessing the ALJ's articulation, the Court

must remain mindful that its role is not to reweigh the evidence.  See Thomas P., 2022 WL

92651, at *8.

>           C.       **Claimant's Subjective Statements**

A claimant will not be considered disabled unless medical and other evidence (e.g.,

medical observations and laboratory findings) is furnished showing the existence of a medical

impairment that could reasonably be expected to produce the symptoms alleged.  42 U.S.C. §

423(d)(5)(A).  Guidance in evaluating the claimant's statements regarding the intensity,

persistence and limiting effects of such subjective symptoms is provided by SSR 16-3p, 2017

WL 5180304 (Oct. 25, 2017), which directs the ALJ to consider the entire case record, including

the objective medical evidence, the individual's statements, statements and other information

provided by medical sources and other persons, and any other relevant evidence, as well as the

level and frequency of the claimant's attempts to obtain relief relative to the level of the

complaints.  Id. at *7-8.  As the First Circuit  has emphasized, in the absence of direct evidence

to rebut a claimant's testimony about subjective symptoms, such statements should be taken as

true.  Sacilowski, 959 F.3d at 441.  That is, if proof of disability is based on subjective evidence

and a credibility determination is critical to the decision, the subjective statements must either be

explicitly discredited or the implication of lack of credibility must be so clear as to amount to a

specific credibility finding.  Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995) (per

curiam); see Vanessa C. v. Kijakazi, C.A. No. 20-363MSM, 2021 WL 3930347, at *4 (D.R.I.

Sept. 2, 2021), adopted, 2021 WL 8342850 (D.R.I. Nov. 2, 2021).

**III.    Analysis**

7

Plaintiff's principal argument is based on his contention that the ALJ failed to consider whether Plaintiff's mental impairments deprived him of the rationality to decide whether to continue treatment. Plaintiff's argument rests on the ALJ's observation of Plaintiff's lack of specialty mental health treatment during the period in issue. Tr. 68. In support of this argument, Plaintiff asks the Court to focus on Dr. Hamel's reference to pre-onset failures to attend scheduled appointments, including Dr. Hamel's notation with respect to the pre-onset period that "seemingly overwhelming anxiety and acknowledged mistrust of others may in part explain his inconsistency in counseling attendance and continuity." Tr. 335, 400. In his brief in support of this argument, Plaintiff somewhat disingenuously[8] contends that, by the time of the ALJ's hearing, "[Plaintiff] was not going to treatment at all." ECF No. 11 at 7.

The Court begins its review of this argument by an examination of the pertinent substantial evidence of record, mindful that it is the Court's "job . . . to . . . review the record and determine whether a reasonable mind . . . could accept it as adequate to support [the ALJ's] conclusion." Burton v. Kijakazi, Civil Action No. 21-cv-11916-ADB, 2023 WL 2354901, at *8 (D. Mass. Mar. 3, 2023).

As described by Dr. Hamel (Plaintiff's treating psychologist until his retirement) in his letter dated February 6, 2023, during 2022 (before the onset of disability), Plaintiff scheduled six appointments with Dr. Hamel and attended three. Tr. 335, 337. In his letter, Dr. Hamel noted

---

[8] Plaintiff provides no citation to support this assertion. As far as the record reflects, at the time of the hearing, Plaintiff was receiving ongoing mental health treatment provided by his primary care physician, Dr. Cardi; indeed, Plaintiff testified during the ALJ hearing that he was actively taking mental health medications. Tr. 99. Plaintiff's argument also omits the fact that treatment with Dr. Hamel had ended due to the latter's retirement; that is, it had not ended because of Plaintiff's mental inability to make a rational decision to continue. Tr. 461. Further, during the hearing, far from alleging no mental health treatment, Plaintiff's attorney represented that more mental health treatment records ("from Associates in Psychology") would be provided, although no such records were produced. Tr. 59-60, 88-89. And neither Plaintiff nor his attorney argued or alleged during the hearing that Plaintiff's ability to obtain necessary mental health treatment during the period in issue was seriously impacted by a lack of funds, even though the attorney argued that Plaintiff was "without funds to obtain any kind of MRI scan" showing back issues. Tr. 90.

that, during this pre-onset period, Plaintiff had been experiencing "seemingly extreme" anxiety due to the destruction of his home in a fire in 2021 and stress caused by work-place issues that had resulted in a demotion; the letter states that this anxiety "may in part explain his inconsistency in counseling attendance and continuity as well as his reluctance to comply with prescribed psychotropic medications." Tr. 335, 337, 400. Dr. Hamel also noted that, "despite his ongoing history of severe anxiety disorders," Plaintiff was able to successfully function for many years as a senior official in the court system and as a cabinet maker; Dr. Hamel declined to offer an opinion regarding Plaintiff's ability to work during the period in issue, except for Plaintiff's cognitive ability to follow both simple and detailed work instructions, as to which Dr. Hamel opined to no limitations. Tr. 335, 400. Dr. Hamel's treating notes are not in the record. The record contains only his letter summarizing aspects of the pre-onset treatment and noting Dr. Hamel's declination to offer an opinion except for no cognitive limits. Plaintiff's relationship with Dr. Hamel ended because of his retirement; therefore, Plaintiff did not fail to continue treatment or attend any appointments with Dr. Hamel during the period in issue due to mental health symptoms.

During the same pre-onset period, Plaintiff was scheduling and attending appointments (some in person and some by telehealth) with his primary care physician, Dr. Cardi, who (like Dr. Hamel) noted that pre-onset "issues at work" were causing "crippling" anxiety.[9] Tr. 370 (cleaned up). Dr. Cardi prescribed mental health medications and addressed mental health concerns, including the administration of medically assisted treatment of substance use disorder

_____

[9] The record does contain a pre-onset reference (that is, while Plaintiff was still working) in Dr. Cardi's treating notes to Plaintiff's failure to appear in person, which adversely impacted his ability to timely receive treatment by injection for opioid use disorder. Tr. 364. However, during this period (July to September 2022), Plaintiff did appear remotely and was prescribed oral medication for opioid use disorder until the injection could be rescheduled. Tr. 356-64.

9

and Plaintiff's continued use of nonprescribed amphetamines, as to which Dr. Cardi advised, "it is critical that he stops the amphetamine use." Tr. 367. Regarding the need for more intensive mental health treatment because Plaintiff's workplace stress exacerbated in the pre-onset period, Dr. Cardi recommended that Plaintiff schedule counseling (presumably with Dr. Hamel) and seek treatment with a psychiatrist. Tr. 366-67. In compliance with this recommendation, Plaintiff saw Dr. Hamel on November 2, 2022,[10] and had seen a psychiatrist by November 22, 2022.[11] Tr. 380-87.

For the period in issue, the record has treating notes for five appointments with Dr. Cardi. The only reference to a failure to attend treatment during the period in issue is the cancellation of one appointment with Dr. Cardi due to a last-minute showing of Plaintiff's house, which he was trying to sell. Tr. 433. As reflected in these five records, the only noncompliance during the period in issue is Plaintiff's occasional ingestion of non-prescribed Adderall. Tr. 436 ("still uses friend[']s Adderall"). Otherwise, Dr. Cardi's records for the period in issue reflect that Plaintiff was using prescribed medications appropriately and mostly had "no psychological symptoms." E.g., Tr. 431, 434, 442. Further, the record establishes that Plaintiff appropriately followed up on Dr. Cardi's pre-onset recommendation for specialty treatment with a psychiatrist but that this treatment was delayed when Plaintiff lost his job because his insurance changed. Tr. 388, 430. However, by March 2023, Dr. Cardi notes that Plaintiff had obtained new insurance and was actively following up on Dr. Cardi's referral for a new psychiatrist. Tr. 437. According to the last record in the file, by the end of March 2023, Plaintiff was waiting to get a date for a non-

---

[10] Dr. Hamel's treating notes for this encounter are not in the record.

[11] The record has no treating note for this encounter.

emergency appointment with psychiatry, at the same time that he was "doing well" with regard to mental health symptoms.  Tr. 441-42.

Turning next to the ALJ's decision, the Court's starting point is SSR 16-3p, 2017 WL 5180304, at *9, which directs adjudicators to consider "attempts to seek medical treatment for symptoms and to follow treatment once it is prescribed when evaluating whether symptom intensity and persistence affect the ability to" work.  Consistent with this directive, the ALJ's decision to discount somewhat the credibility of Plaintiff's subjective statements relies in part on the limited medical evidence during the period in issue, when Plaintiff had just five encounters with his primary care physician and no visits to a psychiatric hospital or to any mental health specialist.  Tr. 68.  However, the ALJ did not consider just Plaintiff's paucity of specialty treatment during this period.  To the contrary, he principally relied on the provider references to significant improvement in Plaintiff's anxiety symptoms during the period in issue, apart from an anxiety surge at the time of the loss of his job and heightened anxiety soon after (in January 2023) as he began an active job search and a renewed search for a new psychiatrist because of the change in his insurance.  Tr. 65-72, 388-410, 430-32.  As cited by the ALJ, this finding is well supported by substantial evidence, including, for example, Dr. Cardi's notes reflecting:

- On March 16, 2023, Plaintiff was "doing fairly well from a Suboxone standpoint," "Alprazolam is generally . . . keeping his anxiety in check. . . . current alprazolam dosing is generally holding him . . . he is trying to 'get resettled' with work . . . holding together pretty well."  Tr. 433-34.

- On March 23, 2023, Plaintiff's prescribed "alprazolam . . . working well," and "[h]e is clear mentally feels stable emotionally." Tr. 436.

- On March 30, 2023, Plaintiff "generally been doing okay, . . . taking [alprazolam] . . . with good effect," . . . "doing well with . . . alprazolam." Tr. 441-42.

11

That is, the ALJ's RFC is appropriately based on substantial evidence "show[ing] that [Plaintiff's] symptoms improved significantly" after he stopped working despite treatment only from his primary care doctor and despite the lack of treatment from any mental health specialist or inpatient treatment.  Tr. 69.

To legally establish that this approach is somehow error in the context of this case, Plaintiff cites Pelkey v. Saul, Civil Action No. 1:19-cv-11479-IT, 2021 WL 1940621 (D. Mass. May 14, 2021).  Pelkey holds that remand is required when the ALJ ignores a treating source opinion of intensifying mental health symptoms, including repeated hospitalizations, precluding the ability to work, and denies benefits because, while the claimant repeatedly sought hospital treatment, he refused to attend ongoing counseling, resisted medication and left a mental health hospital against medical advice.  Id. at *5-6.  Pelkey does not support remand in this case; indeed, it is dramatically distinguishable from the facts here, where there is both no treating source opinion and no failure to follow prescribed treatment.  See, e.g., Frankhauser v. Barnhart, 403 F. Supp. 2d 261, 277-78 (W.D.N.Y. 2005) (remand required when ALJ did not consider opinion of testifying medical expert that claimant's non-compliance with treatment recommendations was "part of the disease").  And assuming, arguendo, that the ALJ did err (which I do not find), any error would be harmless.  See Flood v. Colvin, No. 15-2030, 2016 WL 6500641, at *1 (1st Cir. Oct. 20, 2016) (any failure to separately analyze reasons for lack of treatment is harmless when substantial evidence supports ALJ's credibility determination, including history of conservative treatment, improvement of symptoms with treatment, lack of objective medical findings supporting allegations of disabling restrictions and daily activities).

Plaintiff's remaining arguments may be given short shrift.  Despite non-examining expert narrative findings that Plaintiff's RFC leaves him able to sustain a "normal 8/5/40 work routine,"

12

Tr. 115; see Tr. 124,[12] and the lack of any opinion from any source that he cannot sustain such a routine, Plaintiff relies on Sacilowski, 959 F.3d at 439, for the proposition that the ALJ's failure to perform a separate absenteeism/off task-time analysis in this case is error requiring remand. ECF No. 11 at 9-11.  Plaintiff is mistaken.  Sacilowski involved a treating physician opinion finding that the claimant would miss workdays due to her impairment.  Sacilowski, 959 F.3d at 439.  Here, Plaintiff does not point to any opinion finding that he would miss work or be off task in a way that conflicts with the ALJ's RFC findings and that would support his burden of proof. See Kellilea F. v. Kijakazi, C.A. No. 21-00410-JJM, 2022 WL 2128625, at *8 (D.R.I. June 14, 2022).

Relatedly, Plaintiff contends that, with expert findings of moderate limits in certain functional areas, the ALJ erred in finding that Plaintiff could sustain a normal work schedule. ECF No. 11 at 11-12.  This argument fails because these experts also specifically found that, despite these moderate limits, Plaintiff could sustain a normal work schedule, which "necessarily means that materially excessive off-task time and absenteeism were both considered and not found."  Austin B. v. O'Malley, C.A. No. 23-519-PAS, 2024 WL 3329754, at *3 (D.R.I. July 8, 2024).  With no expert or treating source opining either to greater concentration/persistence limitations or to absenteeism or off-task time, there is no error in the ALJ's approach.  See Marissa L. v. Bisignano, C.A. No. 24-323MRD, 2025 WL 2463218, at *6 (D.R.I. Aug. 26,

---

[12] The reconsideration phase expert expressed the same finding – that Plaintiff can sustain a normal work schedule – slightly differently: "[h]e can complete these types of tasks in two-hour blocks of time."  Tr. 124.  As the Commissioner correctly notes, this finding is based on the typical job's built-in break periods at approximately two-hour intervals.  See SSR 96-9p, 1996 WL 374185, at *6 (July 2, 1996); see also Degraffenreid v. Colvin, No. 15-cv-10185-ADB, 2016 WL 5109509, at *7 (D. Mass. Sept. 20, 2016) ("SSA's Program Operations Manual System . . . instructs administrative adjudicators to consider an 8-hour workday and a 5-day work week (with normal breaks, e.g., lunch, morning and afternoon breaks) in evaluating the ability to sustain work-related functions. . . . As such, state agency doctors generally express their RFC opinions about a claimant's ability to sustain concentration and persistence in terms of being able to do so in two-hour blocks.") (cleaned up).

2025), adopted by text order (D.R.I. Sept. 24, 2025); see also Askew v. O'Malley, No. 24-1051, 2024 WL 4362258, at *2 (1st Cir. Sept. 23, 2024) (no error in ALJ's reliance on experts' "narrative section where both doctors stated that she can carry out instructions in a normal workday/workweek, which is their actual RFC assessment") (cleaned up).  Further, it is settled law that "moderate" mental limitations are not *per se* work preclusive.  Ortiz v. Sec'y of Health & Hum. Servs., 890 F.2d 520, 527 (1st Cir. 1989).

## IV.   Conclusion

Based on the foregoing, Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 11) is DENIED and the Commissioner's Motion to Affirm (ECF No. 12) is GRANTED.  The Clerk is directed to enter judgment in favor of Defendant.

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
April 8, 2026

14